UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FRANCIS BANKINS,<br><br>Defendant. | No. 18-cr-213-CKK/ZMF |

## REPORT AND RECOMMENDATION

### I.   BACKGROUND

On April 11, 2025, the Probation Officed filed a petition requesting that Judge Kollar-Kotelly schedule a status hearing because the Defendant tested positive for THC in May 2024 and February 2025. On April 14, 2025, Judge Kollar-Kotelly granted that Petition and referred the case to the undersigned to conduct the hearing and prepare a Report and Recommendation.

On May 16, 2025, defense counsel filed a motion to remove the supervision condition which required THC testing. Defendant explained that he has a prescription for marijuana usage to treat his documented epilepsy condition.

On May 21, 2025, the parties appeared for a status hearing. Neither the government nor the Probation Office objected to the Defendant's motion. The Probation Office highlighted the Defendant's exemplary behavior while on supervision, including that he has: no other violations; stable housing; and steady employment. The government concurred, noting that the Defendant is "doing an excellent job" and "on the right track."

Given that a year has elapsed since the Defendant began supervision, the parties discussed an alternative request for successful early termination of supervision. Subsequently, defense

1

counsel orally moved to terminate supervision. Neither the government nor the Probation Office objected to this modified request.

## II.  ANALYSIS

### A.  The Defendant's Progress from Incarceration to Reintegration

While incarcerated, the Defendant earned a GED, as well as certifications in horticulture, agriculture, and forklift operation.

Since the Defendant's release, he has maintained steady employment with a restaurant group which operates at seven locations. The Defendant explained that he often works seven days a week, with shifts totaling up to thirteen hours at a time. He further explained that he is currently picking up extra shifts so that he can afford private health insurance, as he felt D.C. Medicaid coverage was inadequate to address his epilepsy diagnosis. The Defendant currently resides with his aunt but is actively working towards securing independent housing.

### B.  Medical Marijuana: It's a Trap

The Defendant's doctor has prescribed marijuana to treat his epilepsy. And there is evidence that epilepsy may be treated by marijuana. *See* Epilepsy Found., *Medical Marijuana*, https://www.epilepsy.com/treatment/alternative-therapies/medical-marijuana (last visited June 27, 2025). The Defendant's use of this prescribed medication triggered the instant violation.

"As for whether Defendant's use of medical marijuana is a violation of federal law, the answer is clear[]: it is." *United States v. Johnson*, 228 F. Supp. 3d 57, 62 (D.D.C. 2017). "Indeed, this Court recently joined the chorus of others recognizing that a defendant under federal supervision may not use medical marijuana in compliance with District of Columbia law." *Id.* (citing *United States v. Parker*, 219 F. Supp. 3d 183 (D.D.C. 2016)).

But simply violating defendants for medical marijuana use ignores reality: defendants are understandably confused by the technical distinction between conflicting state and federal laws. *See id.* at 63 **("**Defendant believed that he was lawfully using medical marijuana to cope with [a medical issue]"). And violating defendants on a technicality flies in the face of "the primary purpose of supervised release": "to facilitate the integration of offenders back into the community rather than to punish them." U.S. Sent'g Comm'n, *Federal Offenders Sentenced to Supervised Release* (2010) ("Supervised Release Report") 9. Recognizing this, courts have found that the "use of the medical marijuana . . . was not the result of a willful violation." *Johnson*, 228 F. Supp. 3d at 63. Courts that have come to this conclusion either terminate supervision early, *see infra* Part II.C., or remove marijuana testing as a condition of supervised release*, see, e.g.*, *United States v. Tolliver*, No. 20-cr-109, 2023 WL 3738052, at *1–2 (W.D. Wash. May 31, 2023) (granting motion after examining 18 U.S.C. § 3553(a) factors).[1]

    C.    <u>Early Termination of Supervised Release</u>

"The Court may terminate a term of supervised release pursuant to 18 U.S.C. § 3583(e) after one year of supervision." *Parker*, 219 F. Supp. 3d at 189 (quoting 18 U.S.C. § 3583(e)(1)).

To make such a determination, the Court first "should consider, but need not make express findings," based on seven factors outlined in 18 U.S.C. § 3553(a):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the

---

[1] Should the District Judge not adopt this Report and Recommendation, the undersigned recommends in the alternative to grant defense's motion to modify the conditions of release to remove marijuana testing.

3

> defendant, and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

*Id.* at 189–90 (citing 18 U.S.C. §§ 3583(e)(1), 3553(a)); *see also United States v. Gammarano*, 321 F.3d 311, 315–16 (2d Cir. 2003) (finding that "'a statement that [the district court] has considered the statutory factors is sufficient'" (quoting *United States v. Gelb*, 944 F.2d 52, 56–57 (2d Cir. 1991))). In considering the factors, "the Court is cognizant that supervised release 'serves an entirely different purpose than the sentence imposed under § 3553(a).'" *United States v. Mauldin*, No. 18-cr-371, 2020 WL 2840055, at *2 (D.D.C. June 1, 2020) (quoting *Pepper v. United States*, 562 U.S. 476, 502 n.15 (2011)). "Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson* (*Johnson I*), 529 U.S. 53, 59 (2000). Indeed, the "congressional policy in providing for a term of supervised release . . . is to improve the odds of a successful transition from the prison to liberty." *Johnson v. United States* (*Johnson II*), 529 U.S. 694, 708–09 (2000). In addition, the Supreme Court has noted the congressional "aim[] . . . to use the district courts' discretionary judgment to allocate supervision to those release[d] who need[] it most." *Id.* at 709. "'The relevant factors under § 3553(a) are, consequently, evaluated mindful of the Supreme Court's clear articulation of the purpose of supervised release and the district court's discretion to limit terms of supervised release to those who need it.'" *Mauldin*, 2020 WL 2840055, at *2 (quoting *United States v. Harris*, 258 F. Supp. 3d 137, 145 (D.D.C. 2017)). Put another way, "the length of [] supervision is dependent solely upon the

4

defendant's need for supervision after release from jail." *United States v. Montenegro–Rojo*, 908 F.2d 425, 432 (9th Cir. 1990).

The factors here favor early termination. The first factor weighs in favor of termination. The Defendant illegally possessed a firearm. While this is troubling, the Defendant neither brandished nor used the firearm. Indeed, there was no indication he was engaged in other criminal activity. "[T]he general focus of supervised release is forward looking, as captured by the second, third, and fourth factors of general deterrence of criminal conduct and specific deterrence of the defendant, as well as the need for continuing supervision to provide the defendant with educational or vocational training, medical care, or other correctional treatment." *Mauldin*, 2020 WL 2840055, at *3 (citing *Johnson I*, 529 U.S. at 59). Thus, these three factors are of critical import. *See id.* "The defendant's maintenance of an unblemished record of compliance with his conditions of release for over [half his period of supervised release] is, perhaps, the best indicator of his ability to continue as a law-abiding member of his community." *Harris*, 258 F. Supp. 3d at 146–47. Thus, "[f]actors two and three thus support early termination of supervised release." *Mauldin*, 2020 WL 2840055, at *3. As for factor four, "the Probation Office does not indicate that the defendant has continuing, specific rehabilitative needs. . . . This factor thus also weighs in favor of early termination of supervised released." *Id.* "Finally, as to the fifth factor . . . , the Court has weighed the relevant factors, and they favor early termination of supervised release. Indeed, even the Probation Office concedes that 'this case meets the criteria for early termination.'" *Id.*[2]

---

[2] "Here, the sixth and seventh factors have limited relevance to the defendant because the 'factor of avoiding unwarranted sentencing disparities . . . would generally undermine the case specific inquiry required in evaluating a motion for early termination of supervised release,' and because this defendant has no restitution obligations." *Mauldin*, 2020 WL 2840055, at *2 (quoting *Harris*, 258 F. Supp. 3d at 145).

"Accordingly, the § 3553(a) factors, taken as a whole, warrant grant of the defendant's motion." *Id.*

After considering the "factors under § 3553(a), the Court must be 'satisfied' that early termination of supervised release 'is warranted by the conduct of the defendant released and [in] the interest of justice.'" *Mauldin*, 2020 WL 2840055, at *3 (quoting 18 U.S.C. § 3583(e)(1)). "The 'interest of justice'" standard gives "'the district court latitude to consider a broad range of factors in addition to an individual's behavior in considering whether to terminate the supervised release period.'" *United States v. Rader*, No. 22-cr-57, 2024 WL 474535, at *4 (D.D.C. Feb. 7, 2024) (quoting *United States v. Pregent*, 190 F.3d. 279, 283 (4th Cir. 1999)). Generally, "[n]o 'extraordinary or unusual conduct' during supervision is required to meet this standard." *Mauldin*, 2020 WL 2840055, at *3.

Judge Lamberth twice adopted the recommendation of Judge Harvey that the lack of a willful violation from medical marijuana usage in conjunction with affirmative steps towards meaningful rehabilitation satisfied the two requirements of 18 U.S.C. § 3583(e)(1) for early termination of supervised release:[3]

- In *Parker*, Judge Lamberth found that "defendant's use [of medical marijuana] was not a willful violation of his supervised release." 219 F. Supp. 3d at 184. Thus, revocation was not appropriate. *See id.* at 189 (citing *United States v. Vaughn*, 265 Fed. App'x. 761, 762 (11th Cir. 2008) (finding revocation appropriate because defendant's "violations [of supervised release conditions] were not inadvertent or accidental, but instead were intentional and deliberate")). The court next looked to the "affirmative steps [the defendant

---

[3] In both cases, Judge Harvey also considered sentencing disparities from subsequent changes to the Sentencing Guidelines. *See Parker*, 219 F. Supp. 3d at 185–86; *Johnson*, 228 F. Supp. 3d at 59–60.

6

took] to become a well-integrated member of the community." *Id.* at 190.  Specifically, the court credited the defendant for earning his GED while incarcerated, maintaining employment, and complying with all other conditions of supervision. *See id.*

- In *Johnson*, the defendant tested positive four times for marijuana use. 228 F. Supp. 3d at 60. Judge Lamberth again adopted Judge Harvey's finding that this "use of the medical marijuana . . . was not the result of a willful violation." *Id.* at 63. The defendant "believed that he was lawfully using [it]." *Id.* The court next credited the defendant for maintaining full-time employment and securing stable housing. *Id.* at 63.

Like the defendants in *Parker* and *Johnson*, the Defendant here has "otherwise complied with all other terms of his supervised release." *Parker*, 219 F. Supp. 3d at 190. The Defendant's use of marijuana does not constitute a willful violation. He—like his doctor—believed it was necessary and lawful to use to treat his epilepsy. Moreover, the Defendant has also taken remarkable steps towards his successful reintegration: earning a GED and numerous certifications while incarcerated; and maintaining steady employment and stable housing post-incarceration. Considering his achievements while incarcerated, otherwise full compliance with supervised release conditions, and management of a "chronic medical condition[,] . . . the Court concludes that early termination of supervised release is in the 'interest of justice.'" *Mauldin*, 2020 WL 2840055, at *4; *see also United States v. Moore*, No. 01-cr-238, 2020 WL 435296, at *4 (D.D.C. Jan. 28, 2020) (terminating supervision early where defendant complied with conditions, completed vocational training, and maintained long-term employment).

## III. CONCLUSION

Accordingly, upon consideration of the Defendant's motion, the government's lack of opposition to the defendant's motion, the entire record in this case, and the relevant statutory purposes of supervised release, the Court recommends that the Defendant's remaining term of supervision—which is less than one year—be terminated early, effective on adoption of this Report and Recommendation.

Date: June 27, 2025                             _____
                                                ZIA M. FARUQUI
                                                UNITED STATES MAGISTRATE JUDGE